UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FARMERS INSURANCE GROUP,

    Plaintiff,

v.

Case No. 08-10597
Hon. Gerald E. Rosen

PLUMBERS LOCAL 98 INSURANCE FUND,

    Defendant.

_____/

**FINDINGS OF FACT AND CONCLUSIONS
OF LAW REGARDING CROSS-MOTIONS FOR SUMMARY
JUDGMENT OR FOR DECISION ON THE ADMINISTRATIVE RECORD**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      September 29, 2009

PRESENT: Honorable Gerald E. Rosen
               Chief Judge, United States District Court

## I. INTRODUCTION

In the present suit, Plaintiff Farmers Insurance Group seeks to recover from the Defendant Plumbers Local 98 Insurance Fund for medical expenses paid to an insured, Sheryl Summer, for injuries she sustained when she slipped and fell while exiting a motor vehicle. The central question is whether this claim for medical expenses triggers an exclusion from coverage under the plan documents for the Defendant Fund for injuries "arising from a motor vehicle accident." This Court's subject matter jurisdiction over this case rests upon the fact that the Defendant Fund is governed by the Employee Retirement

1

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*

Two motions presently are pending before the Court: Plaintiff has moved for summary judgment, while Defendant has filed a motion for a decision on the administrative record or, in the alternative, for summary judgment. Each of these motions has been fully briefed by the parties. Upon reviewing the parties' cross-motions and accompanying briefs, the pleadings, and the administrative record, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these materials, and that oral argument would not significantly aid the decisional process. Accordingly, the Court will decide the parties' cross-motions "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.

As discussed below, the Court has determined that the parties' motions should be decided under the guidelines set forth by the Sixth Circuit in *Wilkins v. Baptist Healthcare System, Inc.,* 150 F.3d 609, 619 (6th Cir. 1998).[1] This opinion and order sets forth the Court's findings of fact and conclusions of law. To the extent that any findings of fact constitute conclusions of law, they are adopted as such. To the extent that any conclusions of law constitute findings of fact, they are so adopted.

## II.  **FINDINGS OF FACT**

The relevant facts are straightforward and not in dispute. On February 1, 1996,

---

[1] Specifically, *Wilkins* holds that neither summary judgment nor a bench trial provides an appropriate procedural basis for resolving ERISA actions to recover benefits. Rather, the Sixth Circuit suggested that district courts generally should review challenged benefit denials "based solely upon the administrative record, and [should] render findings of fact and conclusions of law accordingly." *Wilkins,* 150 F.3d at 619.

Sheryl Summer was injured when she slipped and fell while stepping out of her motor vehicle at a Jiffy Lube shop in Waterford, Michigan.  As a result of this incident, she sustained severe injuries which have necessitated ongoing medical treatment.  At the time of the accident, Ms. Summer was insured under a no-fault automobile insurance policy issued by Plaintiff Farmers Insurance Group, and her medical expenses have been paid by Plaintiff under this policy as they came due.

On September 1, 2004, Ms. Summer became eligible for benefits under the Defendant Plumbers Local 98 Insurance Fund, which was established pursuant to a trust agreement between Plumbers Local Union No. 98 and the Mechanical Contractors Association.  The Defendant Fund is administered by a Board of Trustees, and is governed by the terms of the Fund plan document (the "Plan").

On January 22, 2007, Plaintiff submitted to the Defendant Fund a request for reimbursement of $112,588.42 in medical expenses it had paid on behalf of Ms. Summer from August 1, 2004 to the present arising from her 1996 injuries.  On February 23, 2007, Plaintiff's counsel wrote to the Defendant Fund, stating that "[m]y client has requested that I advise as to whether it or another insurance policy or health benefit plan is primary for payment of the insured's benefits arising out of the ***motor vehicle accident*** in question," and requesting that he be provided a copy of all plan documents.  (Defendant's Motion, Ex. A, Admin. Record at 11 (emphasis added).)

By letter dated April 23, 2007, the Defendant Fund advised Plaintiff that its request for reimbursement had been denied.  (*See* Admin. Record at 17.)  In reaching this

decision, Defendant cited the Plan's exclusions, which provided in pertinent part:

> **C.    Exclusions**
>
> In addition to and not in lieu of other restrictions to coverage set forth in this Plan, the following services and benefits are not covered by the Plan:
>
> * * * *
>
> 25.    Any injury or illness arising from a ***motor vehicle accident*** in the State of Michigan.

(Admin. Record at 31, 33, Plan at 30, 32 (emphasis added).)[2]

On October 16, 2007, Plaintiff appealed the Fund's denial of its claim for reimbursement. As noted by Defendant, while Plaintiff contested the Fund's determination that Ms. Summer's injuries arose from a motor vehicle accident, its counsel's letter to the Fund continued to characterize the underlying 1996 incident in precisely these terms. In particular, Plaintiff's counsel stated near the outset of his letter that Ms. Summer had "suffered injuries in a 1996 ***motor vehicle accident,***" but later observed that these injuries had been sustained while Ms. Summer was "alighting from" or "exiting a motor vehicle." (Admin. Record at 18 (emphasis added).)

By letter dated December 27, 2007, the Defendant Fund's Board of Trustees informed Plaintiff that its appeal had been denied. (*See id.* at 27-29.) In addition to citing the Plan's exclusion for injuries "arising from a motor vehicle accident," the Trustees

---

[2]As noted by Defendant, the Plan as restated in October 2007 includes the same exclusion in identical language, (*see* Admin. Record at 36), as does the Summary Plan Description, (*see id.* at 41).

further explained that the Fund would not reimburse any claims that were submitted more than 12 months after the date an expense was incurred. (*See id.* at 27.) This suit followed, with Plaintiff seeking a declaration that the Defendant Fund must reimburse it for the medical expenses it has paid on behalf of Ms. Summer since she became eligible for benefits under the Fund.

### III.  CONCLUSIONS OF LAW

**A.    The Standards Governing the Parties' Motions**

As a threshold issue, the parties disagree as to the standards that should govern this Court's resolution of their two cross-motions. Plaintiff characterizes this suit as involving a dispute over which of the two parties should pay "primary" benefits to Ms. Summer, and it argues that this is akin to a "coordination of benefits" dispute that the courts have resolved by resort to federal common law. *See, e.g., Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.,* 31 F.3d 371, 374 (6th Cir. 1994); *Citizens Insurance Co. v. Pitney Bowes Software Systems Employee Medical & Health Care Service Corp.,* 508 F. Supp.2d 587, 591-92 (E.D. Mich. 2007). Defendant, on the other hand, contends that this case involves a straightforward claim for benefits under an ERISA plan, with Plaintiff, as subrogee, standing in the shoes of the plan beneficiary, Ms. Summer. *See, e.g., Allstate Insurance Co. v. Operating Engineers Local 324 Health Care Plan,* 742 F. Supp. 952, 956 (E.D. Mich. 1990). The Court finds that Defendant has the better of the argument on this question.

True enough, most of the reported decisions arise from disputes between an

automobile insurer and an ERISA plan as to which party has the primary obligation to pay benefits, and the courts have resolved these disputes by resort to federal common law. *See, e.g., Thorn Apple Valley,* 31 F.3d at 374; *Prudential Property & Casualty Insurance v. Delfield Co. Group Health Plan,* No. 98-1493, 1999 WL 617992, at *3 (6th Cir. Aug. 6, 1999); *Citizens Insurance,* 508 F. Supp.2d at 591-92.  Yet, in each of these cases, the automobile insurer sought to enforce a coordination-of-benefits ("COB") clause in its policy providing that its coverage was secondary to any coverage the insured might have under a health insurance plan.  "Because no federal statute addresses the resolution of the conflict" that sometimes arises in such cases between the COB clauses in the auto insurance policy and the ERISA plan, the courts have reasoned that it is appropriate to fashion and apply federal common law to resolve this conflict.  *Thorn Apple Valley,* 31 F.3d at 374.

In this case, however, the Court is not called upon to resolve a conflict between COB clauses.  Nor is the Plaintiff insurer seeking to enforce any provision in its policy with Ms. Summer.  Rather, Plaintiff's claim for reimbursement in this case is entirely derivative of the rights possessed by Ms. Summer as a Plan beneficiary.  Simply stated, either the Plan excludes coverage for Ms. Summer's injuries or it does not, and Plaintiff's claims will succeed or fail on this ground alone, without the need to decide whether Plaintiff's policy or the Plan provides "primary" coverage.  This is purely a question of plan interpretation, and does not involve Plaintiff's policy in any way, whether its COB clause or any other provision.  Under these circumstances, the case law, while admittedly

scarce, holds that a subrogee or assignee of an ERISA plan participant or beneficiary may stand in the shoes of the participant or beneficiary and bring a claim for benefits under § 502(a) of ERISA, 29 U.S.C. § 1132(a). *See, e.g., Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289-90 (5th Cir. 1988); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1377-79 (9th Cir. 1986); *Allstate Insurance,* 742 F. Supp. at 956. The Court concurs in the reasoning of these decisions and finds that Plaintiff proceeds here as a subrogee, standing in the shoes of Ms. Summer to seek an award of benefits under § 502(a).[3]

Accordingly, Plaintiff's claims in this case are governed by the familiar standards that apply to claims for benefits under an ERISA plan. Specifically, a participant in or beneficiary of a plan governed by ERISA — or, here, a subrogee of an ERISA plan participant or beneficiary — may bring suit in federal district court to recover benefits due under the terms of the plan. *See* 29 U.S.C. § 1132(a)(1)(B). Courts review *de novo* a denial of benefits challenged under this provision, unless the benefit plan confers upon the administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a more deferential "arbitrary and capricious" standard applies. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.

---

[3]It is not clear how much difference this makes to the resolution of this case, as Plaintiff concedes that even if its claims were analyzed under the standards of the case law addressing competing COB clauses, Defendant's interpretation of the Plan still would be judged under the "arbitrary and capricious" standard. (*See* Plaintiff's 12/31/2008 Reply Br. at 5.) As indicated below, the Court finds that this same standard applies to Plaintiff's claim construed as a § 502(a) claim for benefits.

Ct. 948, 956-57 (1989); *Yeager v. Reliance Standard Life Ins. Co.,* 88 F.3d 376, 380 (6th Cir. 1996).

In this case, Defendant contends — and, as noted, Plaintiff concedes — that the "arbitrary and capricious" standard governs the Court's review, in light of the language of the Trust Agreement that clearly and unambiguously (i) confers upon the Trustees the "full power to construe the provisions of this Trust Agreement, or other plan documents, and the terms used therein," (ii) provides that "[a]ny such decision or any such construction adopted by the Trustees shall be binding upon all of the parties hereto [and] the participants and beneficiaries hereof," and (iii) states that "[a]ny such decision, if not in conflict with applicable law, shall be final and conclusive." (Admin. Record at 43, Third Amendment to Trust Agreement at 2.) Similarly, the Plan confers upon the Trustees the "full discretionary authority to determine eligibility for benefits, interpret plan documents, and determine the amount of benefits due," and provides that the Trustees' "decision, if not in conflict with any applicable law or government regulation, shall be final and conclusive." (Admin. Record at 51, Plan at 61.)

Hence, the Court will assess Defendant's interpretation of the relevant Plan provisions — here, the exclusion for injuries "arising from a motor vehicle accident" — under the "arbitrary and capricious" standard of review. This is the "least demanding form of judicial review," under which this Court must uphold a denial of benefits if it is "rational in light of the plan's provisions." *Monks v. Keystone Powdered Metal Co.,* 78 F. Supp.2d 647, 657 (E.D. Mich. 2000) (internal quotation marks and citations omitted),

8

*aff'd,* 2001 WL 493367 (6th Cir. May 3, 2001). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Kentucky Finance Cos. Retirement Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotations and citations omitted), *cert. denied,* 495 U.S. 905 (1990).

**B.    Defendant's Determination that Ms. Summer's Injuries Arose from a Motor Vehicle Accident Was Not Arbitrary and Capricious.**

With the above standards in mind, the Court now turns to the benefit determination at issue here — namely, Defendant's decision that Plaintiff was not entitled to reimbursement of the medical expenses it paid on behalf of its insured, Ms. Summer. As discussed, this benefit denial rested upon Defendant's determination that Plaintiff's claim fell within the Plan exclusion for injuries "arising from a motor vehicle accident." (Admin. Record at 33, Plan at 32.) Quite simply, then, the question before this Court is whether Defendant acted arbitrarily and capriciously in construing this exclusion as encompassing the injuries suffered by Ms. Summer as she exited her motor vehicle.

Defendant's argument on behalf of its interpretation of the Plan exclusion rests largely on two grounds. First, Defendant points to a provision of Michigan's no-fault automobile insurance statute declaring that "[a]ccidental bodily injury . . . arise[s] out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle" if "the injury was sustained by a person while occupying, entering into, or alighting from the vehicle." Mich. Comp. Laws § 500.3106(1)(c). In Defendant's view, this provision shows that an injury suffered while exiting a motor vehicle would be deemed a "motor

9

vehicle accident" under Michigan law. Next, Defendant notes that Plaintiff's own counsel has, on more than one occasion, characterized Ms. Summer's injuries as arising out of a "motor vehicle accident." (*See* Admin. Record at 11, 18.) If Plaintiff's own representative has described Ms. Summer's injuries in these terms, Defendant contends that it surely was reasonable for Defendant to conclude that these injuries arose from a "motor vehicle accident" within the meaning of the Plan exclusion.

In response to the first of these points, Plaintiff correctly observes that the language of the Michigan statute is hardly conclusive here. First, and most importantly, the evident purpose of this statute is to determine the extent to which injuries involving a parked motor vehicle must be covered under a Michigan no-fault insurance policy. *See Putkamer v. Transamerica Insurance Corp.,* 454 Mich. 626, 563 N.W.2d 683, 687 (1997). The Michigan Legislature's judgment on this question sheds no light whatsoever on the proper construction of Defendant's Plan, but instead rests upon wholly distinct policy considerations as to the breadth of coverage that should be provided under a no-fault policy. If, for example, the Michigan Legislature determined that no-fault policies should broadly cover any injuries having anything whatsoever to do with a motor vehicle, it could hardly be said that this would support an equally expansive construction of the "motor vehicle accident" exclusion in Defendant's Plan, particularly where nothing in the language of the exclusion purports to incorporate the standards of the Michigan no-fault act. Moreover, even to the extent that the Michigan statute could be viewed as a legislative assessment of the sorts of injuries for which coverage should be available

under a "motor vehicle" policy, Defendant overstates its case when it claims that § 500.3106(1)(c) treats injuries suffered while exiting a vehicle as arising from a "motor vehicle accident" — simply stated, the phrase "motor vehicle accident" does not appear anywhere in this statute.

Nonetheless, the Court agrees with Defendant that this Michigan statute, and the case law construing it, provides at least some modest degree of support for its interpretation of the Plan exclusion. The Michigan Supreme Court has explained that § 500.3106(1) is meant to "ensure that an injury that is covered by the no-fault act involves use of the parked motor vehicle *as a motor vehicle*," mandating coverage only "where the causal connection between the injury and the use of the motor vehicle was more than incidental, fortuitous, or 'but for.'" *Putkamer,* 563 N.W.2d at 687. The Court then concluded that this causal nexus was present in the case before it, where the plaintiff was stepping into her vehicle when she slipped and fell on some ice, because she "was entering the vehicle with the intention of traveling to her brother's home" and thus "was using the parked motor vehicle as a motor vehicle" when she suffered her injuries. *Putkamer,* 563 N.W.2d at 688. Similarly, in this case, Ms. Summer seemingly was using her parked motor vehicle "as a motor vehicle" when she suffered her injuries, as she had driven the vehicle to the Jiffy Lube shop and was stepping out of it when she slipped and fell. This causal nexus lends at least some support to Defendant's characterization of Ms. Summer's injuries as arising from a "motor vehicle" accident.

Moreover, this causal link serves to distinguish this case from the unpublished

11

decision cited by Plaintiff, *Farm Bureau Mutual Insurance Co. v. Lenawee Health Alliance Employee Benefit Plan,* No. 01-71951 (E.D. Mich. Dec. 13, 2001) (attached to Plaintiff's Motion as Ex. H.) In that case, the insured was injured while moving a transmission that his brother had earlier removed from a truck. The defendant plan denied coverage, citing an exclusion for "injuries received in an accident involving a car or motor vehicle." *Farm Bureau,* slip op. at 3. In holding that this exclusion did not apply, Judge Duggan reasoned that the accident "involved an automobile part that had been removed from a motor vehicle," but did not "involve the truck from which the transmission had been removed, or any other 'motor vehicle.'" *Id.* at 5. The court also rejected the defendant's appeal to a provision of the Michigan no-fault act providing coverage for injuries arising out of the "maintenance" of a motor vehicle, Mich. Comp. Laws § 500.3105(1), explaining that "[i]f the drafters of the [defendant plan] intended to exclude injuries arising out of the maintenance of a motor vehicle or all situations where no-fault automobile insurance is triggered, it could have stated so directly, but did not." *Id.* at 5-6.

The *Farm Bureau* decision provides little guidance here. As observed by the court, the insured in that case did not suffer his injuries in an accident "involving a motor vehicle," but rather in an accident involving a ***part that had been removed*** from a motor vehicle. Here, in contrast, there is a much closer causal nexus between Ms. Summer's injuries and her use of her motor vehicle as a motor vehicle, where she presumably had just finished driving the vehicle and was stepping out of it when she sustained her

injuries. To be sure, if the Plan exclusion here, like the one at issue in *Farm Bureau,* had encompassed all injuries "involving a motor vehicle," Defendant would have a still stronger argument for invoking this exclusion, because Ms. Summer's accidental fall could readily be characterized as "involving" the motor vehicle she was exiting at the time. Yet, the Plan exclusion's more narrow reference to injuries arising from a "motor vehicle accident" does not necessarily render it inapplicable to Plaintiff's claim in this case, and *Farm Bureau* has nothing to say on this dispositive question.[4]

Turning next to Defendant's attempt to bolster its interpretation of the Plan exclusion by reference to the statements of Plaintiff's own counsel that Ms. Summer suffered her injuries in a "motor vehicle accident," Plaintiff argues that its counsel's "inadvertent mischaracterization" does not rise to the level of a binding judicial admission, and that it therefore should be given no weight. (*See* Plaintiff's Reply Br. at 2.) Yet, Plaintiff itself acknowledges that "[i]n interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person." *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund,* 203 F.3d 926, 934 (6th Cir. 2000). Surely, then, Plaintiff's counsel's use of the phrase "motor vehicle accident" can be viewed as evidence that an "ordinary person" would consider Ms. Summer's injuries to have resulted from a "motor vehicle accident." Indeed, this shows that even someone

---

[4]It also is worth noting that the plan interpretation under consideration in *Farm Bureau* was not reviewed under the deferential "arbitrary and capricious" standard that governs here.

with an interest in the outcome, and someone with legal training and expertise in principles of plan construction, has evidently recognized that Ms. Summer's injuries could reasonably be characterized as the product of a "motor vehicle accident."

In the end, and as Plaintiff acknowledges, Defendant's interpretation of the Plan exclusion, and its application of this exclusion to deny Plaintiff's claim, "must be upheld unless it is arbitrary and capricious, or unreasonable." *Peruzzi v. Summa Medical Plan*, 137 F.3d 431, 433 (6th Cir. 1998) (internal quotation marks and citation omitted). Whether or not this Court might independently conclude that Ms. Summer's slip and fall upon exiting her vehicle was a "motor vehicle accident," it matters only whether Defendant acted reasonably in answering this question in the affirmative. This slip and fall involved a motor vehicle, and was causally related to Ms. Summer's use of her vehicle as a motor vehicle. Moreover, Plaintiff's counsel deemed it appropriate, on more than one occasion, to characterize Ms. Summer's injuries as arising from a "motor vehicle accident." Finally, for all of its appeals to "ordinary and plain meaning," Plaintiff has not identified any authority that would indicate that Ms. Summer's slip and fall upon exiting her vehicle should ***not*** be deemed a "motor vehicle accident." Under these circumstances, the Court cannot say that Defendant's denial of Plaintiff's claim was arbitrary and capricious. It follows that this determination must be affirmed.

## IV. <u>CONCLUSION</u>

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for

decision on the administrative record (docket #13) is GRANTED.  IT IS FURTHER

ORDERED that Plaintiff's motion for summary judgment (docket #14) is DENIED.


                                    s/Gerald E. Rosen
                                    Chief Judge, United States District Court

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                                    s/Ruth Brissaud
                                    Case Manager